UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21546-CIV-GAYLES

IVAN JIMENEZ, JUAN MACHADO,
JOSE MUNOZ, GUILLERMO SENCION, and
MIGUEL VASQUEZ,

    Plaintiffs,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and UNITED STATES
DEPARTMENT OF STATE,

    Defendants.
_____/

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR STATUS CONFERENCE AND TO STAY BRIEFING

Defendants, U.S. Department of Homeland Security (on behalf of its components Office of Biometric Information Management ("OBIM") and U.S. Citizenship and Immigration Services ("USCIS")) and U.S. Department of State, hereby respond to Plaintiffs' Motion for Status Conference and to Stay Briefing (ECF No. 44).

## ARGUMENT

Despite receiving five extensions of time and having had more than four months to respond to Defendants' Motion for Summary Judgment, Plaintiffs waited until a federal holiday, one day before Plaintiffs' response was due, to contact the undersigned about what Plaintiffs' view as deficiencies in Defendants' Motion, and to propose a stay of briefing. Plaintiffs' Motion asks the Court to order the government to file an additional declaration regarding redactions made by non-party U.S. Immigration and Customs Enforcement (ICE) to 26 pages of records ICE produced to Plaintiffs in June 2020, after those records were referred to ICE by USCIS. As demonstrated below, Plaintiffs' counsel has severely misrepresented the circumstances and his need for the relief he is seeking.

On the same date as he filed Plaintiffs' Motion to Stay Briefing (February 16, 2021), Plaintiffs' counsel, Kel McClanahan, revealed on Twitter that he already has much of the

information redacted from the ICE documents at issue. A copy of the relevant portion of Plaintiffs' counsel's Twitter feed is attached hereto as Exhibit A.

Exposing what he believes is evidence of government corruption or incompetence, Mr. McClanahan explains to his followers that ICE had previously produced the same 26 pages to him, but with far fewer redactions.  Mr. McClanahan's tweets explain that ICE first produced the records to him in February 2020 and that the records were only "lightly redacted."  Mr. McClanahan adds that he "didn't have any major problem" with the redactions.  Mr. McClanahan then explains, however, that ICE  produced the documents again in June of 2020, but with more redactions.  According to Mr. McClanahan, he intends to use this "wonderful little revelation[]"  to "bludgeon" the government about its redaction decisions. In relevant part, Mr. McClanahan tweeted the following:

> So, I have a client who's trying to get a visa. We filed a request with USCIS for his A-file. We got a response in 2019 with a bunch of pages and a note that said that several pages were referred to ICE. OK, fine, whatever. We then get a release from ICE in February 2020. It's pretty lightly redacted. I don't have any major problems with it.
>
> Then COVID hits and for some reason ICE forgets that they sent this response. They start telling the judge that they're working on the referral. Then in June 2020 they make a release. Same documents. Same referral. Now it is so heavily redacted you can barely tell who it's about. I'd show examples but they've got PII in them.
>
> It's pretty clear what happened. The original referral happened before we filed suit. Nobody bothered to tell ICE that the request was in litigation, so they just processed it like good, conscientious FOIA officers. Then they forgot they did that.
>
> A few months later, they start getting bothered by a DOJ lawyer asking about the referral. They think, "Well, this asshole sued us, so we'll just withhold everything. (b)(5), (b)(6), (b)(7)(E), you name it. He won't be able to read ANYTHING."
>
> Except that they DID reply to me. And now I have the mostly unredacted pages. And they're making all these over-the-top claims about how sensitive all this stuff is, with no idea that I'm going to bludgeon them with the fact that, for example, the super secret law enforcement technique they are protecting is that they asked the FBI (in 1977!) if they had a file on the guy.
>
> To head off the question, no, in no way am I concerned that someone involved in this case will see this. . . .

Kel McClanahan (@NatlSecCnslr), Twitter, https://twitter.com/NatlSecCnslrs (February 16, 2021, 12:43am) (reformatted).

As explained below, Mr. McLanahan himself caused ICE to produce the 26 pages at issue twice by denying he received ICE's first production. Even though he now admits in his tweets that he "[got] a release from ICE in February 2020," Mr. McClanahan indicated to the undersigned in March of 2020 that he had not received any records from ICE. Because the coronavirus pandemic had made it difficult to reach ICE's FOIA personnel for information, the undersigned had emailed Mr. McClanahan on March 4, 2020 to ask, "Have you received any response directly from ICE related to the 26 pages referred by USCIS?" A copy of the undersigned's email exchange with Mr. McClanahan is attached hereto as Exhibit B. Mr. McClanahan responded, "I haven't received anything from anyone." Five days later, on March 9, 2020, Mr. McClanahan again wrote to the undersigned to inquire about the status of the records he claimed he had not received.

Based on Mr. McClanahan's representation that he had not received any material from ICE, the undersigned and USCIS personnel followed up with ICE about the referral. The undersigned advised Mr. McClanahan, "We've reached out to ICE for an update as to the records referred to them and are awaiting a response. . . I hope to have information for an updated status report soon." Mr. McClanahan never advised the undersigned that he had *already* received the records.

In the weeks and months that followed, Mr. McClanahan participated in the preparation of Joint Status Reports advising the Court that ICE was still processing the records for production – even though Mr. McClanahan had already received the records. *See* ECF Nos. 18 and 19. The parties' Second Joint Status Report, filed March 27, 2020, advised the Court that

> USCIS and the undersigned counsel have requested that ICE expedite its review of the material referred to it. As of this date, ICE has not yet completed processing the material referred to it.

ECF No. 18 at 3.

The Parties' Third Joint Status Report, filed June 1, 2020, advised the Court that

> the undersigned counsel for the federal government defendants [had] been unable to determine the current status of ICE's work in processing the material referred to it. The undersigned will continue in his efforts to obtain and provide the status to Plaintiffs' counsel.

ECF No. 19 at 3.

Despite what has now been revealed in his Tweets, Mr. McClanahan insisted on including the following language in the parties' Third Status Report:

> Plaintiffs ask the Court to order ICE to complete its processing of these records and release all releasable information to Plaintiffs no later than July 3, 2020. If ICE believes that this deadline is infeasible, Plaintiffs ask[] the Court to order ICE to [] propose a detailed release schedule for the responsive records, including specific information about the number of records and any factors ICE believes will hinder its production. Plaintiffs ask that the Court not accept a blanket statement that the coronavirus emergency has caused its delays without further specifics about how its production is [a]ffected and what measures it is taking to address the matter.

*Id*.

ICE made its second production of the same records in June 2020. As for why it may have been more heavily redacted than the Agency's February 2020 production, agencies such as ICE have a number of FOIA analysts and in the event the same set of documents is processed by two different analysts, there can be differences in processing. While DHS and its components make every effort through training and supervision to ensure consistency in processing, it is inevitable and not surprising that two individuals will come to different conclusions regarding the application of exemptions to particular pieces of information. Regardless, Plaintiff did not alert the undersigned to any issue whatsoever with ICE's production – or even the fact that it had produced the same pages twice.

The government Defendants moved for summary judgment regarding their responses to Plaintiffs' twelve FOIA requests on October 7, 2020. Although Plaintiffs' cross-motion for summary judgment and response was due on November 13, 2020, Plaintiffs sought, without opposition, five extensions. After the last of these, Plaintiffs' response to Defendants' Motion for Summary Judgment was due on February 16, 2021 – more than four months after Defendants filed it. Instead of filing a response, Plaintiffs seek to hold up briefing based on their challenge to redactions of information they have already been provided. Defendants respectfully submit that Plaintiffs are not entitled to the relief they seek. At best, Plaintiffs are wasting the Court's time. At worst, they are perpetrating a fraud upon it.[1]

---

[1] Plaintiffs' Motion, at footnote 2, explains that they would also like to bring to the Court's attention, "such as the Department of Homeland Security's ("DHS") failure to refer Plaintiffs'

## CONCLUSION

For the reasons provided above, Plaintiffs' Motion for Status Conference and to Stay Briefing should be denied.

Dated: February 16, 2021
Miami, Florida

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:  /s/ Carlos Raurell
Carlos Raurell
Assistant United States Attorney
Florida Bar No. 529893
Carlos.Raurell@usdoj.gov
United States Attorney's Office
99 NE 4th Avenue, Suite 300
Miami, Florida 33132
Telephone: (305) 961-9243
Facsimile: (305) 530-7139
Attorneys for the Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2021, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system.

 /s/ Carlos Raurell
CARLOS RAURELL
Assistant United States Attorney

---

requests for ADIS information to Customs and Border Protection, . . . Defendants' inexplicable failure to include copies of the request correspondence with the Holzer and Eggleston declarations, and a missing footnote in the Eggleston declaration."  These are matters which can and should be addressed in Plaintiffs' briefing on summary judgment – not in a status conference.  As for the missing footnote 3 in the Eggleston Declaration, the superscript pointer was a typo and should not have been included.  There is no missing footnote.