UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-21546-CIV-GAYLES/OTAZO-REYES

IVAN JIMENEZ, JUAN MACHADO,
JOSE MUÑOZ, GUILLERMO SENCION,
and MIGUEL VASQUEZ,

   Plaintiff,

v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and UNITED
STATES DEPARTMENT OF STATE,

   Defendants.

_____ /

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon the following submissions:

(1) Defendants United States Department of Homeland Security ("DHS") and United States Department of State ("State Department")'s (together, "Defendants") Motion for Summary Judgment (hereafter, "Motion") [D.E. 29]; and

(2) Plaintiffs Ivan Jimenez ("Jimenez"), Juan Machado ("Machado"), Jose Muñoz ("Muñoz"), Guillermo Sencion ("Sencion"), and Miguel Vasquez ("Vasquez")'s (together, "Plaintiffs") Cross-Motion for Summary Judgment (hereafter, "Cross-Motion") [D.E. 62].

These matters were referred to the undersigned for report and recommendation by the Honorable Darrin P. Gayles, United States District Judge, pursuant to Title 28, United States Code, Section 636 [D.E. 83].  The undersigned held a hearing on these matters on February 9, 2022 (hereafter "Hearing") [D.E. 85].  For the reasons stated below, the undersigned respectfully recommends that Defendants' Motion be GRANTED; Plaintiffs' Cross-Motion be DENIED; and

Final Judgment be ENTERED in favor of Defendants.

## PROCEDURAL BACKGROUND

On April 23, 2019, Plaintiffs commenced this action pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28 U.S.C. § 1651.  See Complaint [D.E. 1 at 2].  The action concerns records requests made to the State Department and to two components of DHS, namely the Office of Biometric Identity Management ("OBIM") and the United States Citizenship and Immigration Services ("USCIS").  Id. at 3.  Plaintiffs assert ten causes of action related to their records requests, divided as follows: three for OBIM records; three for USCIS records; and four for State Department records.  Id. at 3-13.

The three causes of action relating to OBIM records are:

First:   Jimenez/Machado, Constructive Records Denial, Request 2019-OBFO-05965;

Second: Jimenez/Muñoz, Records Denial, Request 2019-OBFO-05969; and

Third:  Jimenez/Sencion, Records Denial, Request 2018-OBFO-17760.

The three causes of action relating to USCIS records are:

Fourth: Jimenez/Machado, Constructive Records Denial, Request NRC2018089200;

Fifth:   Jimenez/Muñoz, Records Denial, Request NRC2018188049; and

Sixth:  Jimenez/Sencion, Records Denial, Request NRC2018089201.

The four causes of action relating to State Department records are:

Seventh: Jimenez/Machado, Constructive Records Denial, Request F-2018-04237;

Eighth: Jimenez/Muñoz, Records Denial, Request F-2014-09926;

Ninth:  Jimenez/Sencion, Records Denial, Request F-2018-06912; and

Tenth:  Jimenez/Vasquez, Constructive Records Denial, Requests F-2017-17779 & F-2018-00322.

Id.  All of Plaintiffs' FOIA requests sought records "pertaining to the revocations of their visas." See Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiffs' Cross-Motion for Summary Judgment (hereafter, "Memorandum") [D.E. 61 at 1].

On May 22, 2019, Defendants requested an extension of time to respond to the Complaint to allow them "to promptly provide Plaintiffs all information to which they are entitled under FOIA before a response to the Complaint is due." See Defendants' Unopposed Motion for 30-Day Extension of Time to Respond to Plaintiffs' Complaint [D.E. 12 at 1].  On May 24, 2019, the Court granted Defendants' request, administratively closed the case, and required the parties to file successive status reports regarding Defendants' "progress in providing Plaintiffs with the requested documents."  See Paperless Order [D.E. 14].  On July 23, 2020, the parties filed a fourth status report indicating that Defendants' supplementation would soon be completed and proposing a summary judgment briefing schedule, which the Court adopted on August 17, 2020.  See Fourth Joint Status Report & Proposed Briefing Schedule [D.E. 26]; Order [D.E. 27].[1]

In their Motion, Defendants argue that they "conducted adequate searches for records responsive to Plaintiffs' requests and properly withheld certain information pursuant to well-established FOIA exemptions."  See Motion [D.E. 29 at 1].  In support of their request for summary judgment as to all counts, Defendants proffered the Declarations of James V.M.L. Holzer ("Holzer Declaration") on behalf of OBIM; Jill Eggleston ("Eggleston Declaration") on behalf of USCIS; and Eric Stein ("Stein Declaration") on behalf of the State Department.  Id. at 6, 8, 9; Holzer Declaration [D.E. 29-1]; Eggleston Declaration [D.E. 29-2]; Stein Declaration & Exhibit [D.E. 29-

---

[1] Plaintiffs informed the undersigned at the Hearing that, given Defendants' supplementation, the First, Fourth, Seventh and Tenth Causes of Action should be deemed claims for actual, rather than constructive, denial of records.

3, 29-4].  Plaintiffs also filed the Declaration of Fernando Pineiro on behalf of USCIS' Immigration and Customs Enforcement ("ICE") component, with Appendices (hereafter, "Pineiro Declaration") [D.E. 54-1 to 54-6].

Plaintiffs counter that the Court should deny Defendants' Motion and grant their Cross-Motion because Defendants "performed inadequate searches for records responsive to" some of the FOIA requests and "failed to demonstrate that there are no genuine issues of material fact regarding their withholding of information responsive to" some of the FOIA requests.  See Memorandum [D.E. 61 at 4].  However, Plaintiffs ask the Court to address two threshold issues prior to considering these counterarguments:  their demand for correspondence relating to their FOIA requests with respect to the First through Sixth Causes of Action; and their request for denial of the presumption of good faith for the declarations proffered by DHS (on behalf of OBIM) and by ICE.  Id.

**APPLICABLE LAW**

*1.*    *FOIA*

FOIA requires federal agencies to make records and documents publicly available upon request, unless the documents fall within one of several statutory exemptions.  See 5 U.S.C. § 552(b) (listing matters as to which FOIA does not apply).  The relevant FOIA exemptions in this case cover matters that are:

(3)  specifically exempted from disclosure by statute. . .

(5)  inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested;

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy; [and]

4

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law . . .

See 5 U.S.C. § 552(b)(3), (5), (6), (7)(C) & (7)(E).

FOIA authorizes courts "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." See 5 U.S.C. § 552(a)(4)(B). "In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action." Id. "Resort to in camera review is discretionary". Stephenson v. I.R.S., 629 F.2d 1140, 1145 (5th Cir. 1980). An "agency may rely on affidavits [or declarations] to meet its burden so long as they provide an adequate factual basis for the district court to render a decision." Miccosukee Tribe of Indians of Florida v. United States, 516 F.3d 1235, 1258 (11th Cir. 2008) (citing Miscavige v. I.R.S., 2 F.3d 366, 368 (11th Cir.1993)).

"Agency affidavits [or declarations] are accorded a presumption of good faith." Del Rio v. Miami Field Office of the Federal Bureau of Investigations, No. 08–21103–CIV, 2009 WL 2762698, at *6 (S.D. Fla. Aug. 27, 2009) (citing Florida Immigrant Advocacy Ctr. v. Nat'l Sec. Agency, 380 F. Supp. 2d 1332, 1343 (S.D. Fla. 2005)). "When reviewing courts consider good faith, they do so to determine only whether to credit agency affidavits detailing the reasons why an exemption applies or why a search was adequate." Broward Bulldog, Inc. v. U.S. Dep't of Justice, 939 F.3d 1164, 1180 (11th Cir. 2019).

### 2.      *Summary Judgment*

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." Miscavige, 2 F.3d at 369; see also St. Andrews Park, Inc. v. U.S. Dep't. of Army Corps of Eng'rs, 299 F. Supp. 2d 1264, 1267 (S.D. Fla. 2003) (same).  "Summary judgment for the federal agency is proper '[i]f the affidavits [or declarations] provide specific information sufficient to place the documents within the exemption category, if this information is not contradicted in the record, and if there is no evidence in the record of agency bad faith.'" Florida Immigrant Advocacy, 380 F. Supp. 2d at 1338 (citation omitted).  "Merely conclusory statements" are insufficient. Broward Bulldog, 939 F.3d at 1180 (internal quotation marks and citation omitted).

## FACTS

In support of their Motion, Defendants proffered sixty-six undisputed facts.  See Defendants' Statement of Undisputed Facts (hereafter, "Statement of Facts") [D.E. 30].  Plaintiffs admit only five of those facts.  See Plaintiffs' Response to Defendants Statement of Undisputed Facts (hereafter, "Response to Statement of Facts") [D.E. 61].  *The* admitted *facts are set forth below, designated by their original numbers*:

1. Plaintiffs tendered the following requests to OBIM under the Freedom of Information Act, 5 U.S.C. § 552:

   a. request dated November 14, 2018 (2019-OBFO-05965), which sought "all information located in the Automated Biometric Identification System ("IDENT"), Arrival Departure Information System ("ADIS"), and other OBIM systems about Mr. Machado";

b. a request dated November 14, 2018 (2019-OBFO-05969), which sought "all information located in the [IDENT], [ADIS], and other OBIM systems about Mr. Muñoz"; and

c. a request dated March 3, 2018 (2018-OBFO-17760), which sought "[a] complete copy of all the files, records, notes, correspondence, etc. that you have on Guillermo Sencion from January 2000 until present day, including emails and letters."

. . .

8.      Plaintiffs included fingerprint cards with their FOIA requests to OBIM. []

. . .

21.      Plaintiffs submitted the following FOIA requests to USCIS:

a. a request dated June 3, 2018, (NRC2018089200), which sought "an electronic copy of Mr. Machado Amadis' alien file";

b. a request dated November 16, 2018 (NRC2018188049), which sought "an electronic copy of Mr. Muñoz' alien file"; and

c. a request dated June 3, 2018 (NRC2018089201), which sought "an electronic copy of Mr. Sencion Suarez' alien file."

. . .

33.      Plaintiffs submitted the following six FOIA requests to the Department of State:

a. a request dated June 4, 2014 (F-2014-09926), by Plaintiff Jose Muñoz, seeking "all records that the Department of State has regarding Jose Roberto Muñoz Moncion that prove that Mr. Muñoz is a money launderer/drug trafficker or any information that proves that he is involved in any illegal/criminal/activities";

b. a request dated February 21, 2018 (F-2018-01563), by Plaintiff Sencion for "[a]ny/all records, entries, notes, emails in your possession and in your system of records inside the continental United States of America and in your Consular Posts Abroad ([e]specially in the US Consulate in Santo Domingo) regarding any record, information or allegations of any illegal/unlawful activity that could have led to subject of record's visa cancellation/revocation by the United States Consulate in Santo Domingo, on or about October 24, 2014 (Mr. Sencion was summoned to the Consulate and had his visa revoked in front of him. Please include a detailed index of such records wi[th] all reasonably segregable information"[)];

7

c. a request dated June 3, 2018 (F-2018-04237), by Plaintiff Machado Amadis, which sought four categories of records pertaining to him, including "any records which were withheld in full or in part in response to a previous FOIA request." Plaintiff specifically requested that State "perform new searches for records responsive to each of the items in this request, since they are broader than his previous requests";

d. a request dated September 11, 2018 (F-2018-06912), by Jimenez and Sencion for records responsive to request F-2018-01563, excluding records previously released in full to Sencion;

e. a request dated November 6, 2015 (F-2015-16891), by Vasquez for "[r]ecords regarding alleged criminal activities that have led to his visa revocation that took place in Santo Domingo, Dominican Republic in the year 2002"; and

f. a request dated December 18, 2017 (F-2017-17779), by Jimenez and Vasquez for "all records, including emails, pertaining to the revocation of the visa previously held by Mr. Vasquez," which was subsequently reassigned case number F-2018-00322.

. . .

34. Although there were a total of six requests, the requests sought records in possession of the State Department regarding four of the five Plaintiffs (Jose Muñoz, Guillermo Sencion, Juan Machado Amadis, and Miguel Vasquez).

See Statement of Facts [D.E. 30, *passim*]; Response to Statement of Facts [D.E. 61 at 26-29].[2]

Plaintiffs denied four of Defendants' facts as follows: "Deny that the record supports this legal conclusion." *The <u>denied</u> facts are set forth below, designated by their original numbers*:

46. The Department of State's searches for records responsive to Plaintiffs' FOIA requests were reasonably expected to locate the requested records.

. . .

52. Disclosure of the internal law enforcement codes and encounter information would reveal law enforcement techniques employed during the course of the enforcement of immigration laws of the United States. . . . Disclosure of this information could undermine DHS's efforts in this regard and could enable members of the public to evade such enforcement.

. . .

---

[2] Although they submitted six requests to the State Department, Plaintiffs only challenge Defendants' responses to the four requests set forth in Undisputed Fact No. 33(a), (c)-(d) & (f). See Compl., Seventh through Tenth Causes of Action [D.E. 1 at 9-13].

55. The information withheld concerns the issuance or refusal of a permit to enter the United States by the U.S. Department of State.

. . .

62. All of the records the Department withheld are "visa-related records."

Id.

Plaintiffs responded to fifty-seven of Defendants' facts as follows: "Neither admit nor deny due to lack of direct knowledge."

Id.

## **THRESHOLD ISSUES**

Plaintiffs first challenge the OBIM, USCIS and ICE declarations on the grounds that the declarants should have attached copies of Plaintiffs' FOIA requests and the agencies' respective responses thereto (hereafter, "Requested Correspondence"). Plaintiffs claim that they "do not appear to have all of the correspondence due to them being sent over several years to several different lawyers, and they are not reasonably able to ascertain what correspondence they lack based on the record before the Court, while it is all easily accessible to the agencies seeking summary judgment." See Memorandum [D.E. 61 at 5]. Plaintiffs argue that, absent the Requested Correspondence, the agencies "cannot meet their respective burdens of proof . . . because the declarations constitute inadmissible secondary evidence about the processing of the case in violation of the Best Evidence rule." Id. Plaintiffs ask that Defendants' Motion be denied with respect to their First through Sixth Causes of Action on this basis. Id. at 8.

Plaintiffs acknowledge that hearsay is permissible in FOIA declarations and argued at the Hearing that they are not asserting a hearsay objection to the OBIM, USCIS and ICE declarations. Plaintiffs contend that Rule 1002 of the Federal Rules of Evidence (hereafter "Rule 1002"), known as the Best Evidence Rule, requires attachment of the Requested Correspondence to these

declarations, in the same fashion as the State Department furnished its declaration.  Rule 1002 provides: "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."  See Fed. R. Evid. 1002.  Plaintiffs can point to no such requirement for agency declarations in the FOIA case law and merely reference some FOIA litigation materials from the Department of Justice ("DOJ").  See DOJ power point slide entitled Litigation Considerations [D.E. 62-2] (listing "Discuss procedural history of request and attach correspondence" as a declaration bullet point); DOJ power point slide entitled Advanced FOIA Litigation [D.E. 62-3] (listing "Emails and other correspondence to and from the requester" as an example of "Evidence/Support").  These materials carry no legal weight and are irrelevant given that DOJ is not involved in this case.  Hence, there is no merit in Plaintiffs' contention that, without attaching the Requested Correspondence as exhibits, the OBIM, USCIS and ICE declarations are insufficient for DHS to carry its burden of proof.

Plaintiffs make a second threshold argument that is related to their first one.  Plaintiffs contend that the Holzer Declaration on behalf of OBIM and the Pineiro Declaration on behalf of ICE are not entitled to the presumption of good faith accorded to agency declarations "because both DHS and ICE withheld information [they] had previously released to Plaintiffs and defended those withholdings as justified by law."  See Memorandum [D.E. 61 at 8].  At the Hearing, Plaintiffs claimed that they need the Requested Correspondence to show discrepancies between the agencies' earlier responses (with fewer redactions) and the later responses (with more redactions).  Plaintiffs do not challenge the propriety of the subsequent redactions. Rather, they rely on the purported inconsistent responses to obtain denial of the good faith presumption and a finding of bad faith with respect to the Holzer Declaration and the Pineiro Declaration, speculatively claiming that the later responses are more restrictive due to this litigation.  According

to Plaintiffs, the bad faith finding would render the Holzer Declaration and the Pineiro Declaration ineffective; hence, it would support denying Defendants' Motion and granting their Cross-Motion as to their First, Second, Third and Fourth Causes of Action.

However, an agency's "inconsistent approach to the classification designations of several records" does not support a finding of bad faith with respect to its supporting declarations.  See Khatchadourian v. Defense Intelligence Agency, 453 F. Supp. 3d 54, 79 (D.D.C. 2020).  Moreover, Plaintiffs proffer no support whatsoever for their contention that OBIM and ICE were motivated by this litigation to withhold non-exempt documents from Plaintiffs.  Thus, Plaintiffs have not overcome the good faith presumption that attaches to the Holzer Declaration and the Pineiro Declaration.

## ADEQUACY OF OBIM'S SEARCHES

Plaintiffs challenge the adequacy of OBIM's search for responsive records in connection with their First and Second Causes of Action.[3]  At the Hearing, Plaintiffs articulated their challenges as follows:  as to the first claim only, OBIM should have conducted an alien number search for responsive records, in addition to a fingerprint search; and as to both claims, OBIM should have referred the FOIA requests to Customs and Border Patrol ("CBP").  The following FOIA requests underlie Plaintiffs' First and Second Causes of Action:

> a. request dated November 14, 2018 (2019-OBFO-05965), which sought "all information located in the Automated Biometric Identification System ("IDENT"), Arrival Departure Information System ("ADIS"), and other OBIM systems about Mr. Machado";
>
> b. a request dated November 14, 2018 (2019-OBFO-05969), which sought "all information located in the [IDENT], [ADIS], and other OBIM systems about Mr. Muñoz"

---

[3]  At the Hearing, Plaintiffs withdrew their challenge to the adequacy of the State Department's search with respect to their Seventh Cause of Action.

See Undisputed Fact No. 1(a) & (b), *supra*.

The undersigned first addresses Plaintiffs' contention that OBIM should have conducted an alien number search for records pertaining to Machado in response to FOIA Request 2019-OBFO-05965, underlying their First Cause of Action.  The parties agree that "Plaintiffs included fingerprint cards with their FOIA requests to OBIM."  See Undisputed Fact No. 8, *supra*. Moreover, Plaintiffs do not claim that they provided Machado's alien number part of their FOIA request.  With regard to OBIM's response to FOIA Request 2019-OBFO-05965, the Holzer Declaration states:

> A search conducted using fingerprint cards will result in the location of any records relating to a subject in IDENT.  OBIM is also able to locate such records using an Alien Identification Number, which would locate the same records.
>
> OBIM's search for records relating to Plaintiff Machado resulted in no records being located.

See Holzer Declaration [D.E. 29-1 ¶¶ 11-12].  Plaintiffs rely on the second sentence above to argue that "it fell to DHS to ask for [Machado's alien number] or obtain it elsewhere when [OBIM] failed to locate any records through its fingerprint search."  See Plaintiffs' Reply in Support of their Cross-Motion (hereafter, "Plaintiffs' Reply") [D.E. 75 at 5].  However, Plaintiffs point to no authority imposing this additional burden on OBIM in responding to FOIA Request 2019-OBFO-05965, given that it was only accompanied by fingerprint cards.  Therefore, there is no basis for finding OBIM's search inadequate with respect to Plaintiffs' First Cause of Action.

Plaintiffs also argue that OBIM's search was inadequate with respect to their First and Second Causes of Action on the grounds that OBIM should have referred FOIA Requests 2019-OBFO-05965 and 2019-OBFO-05966 to CBP.  As noted above, those requests sought all information located in IDENT, ADIS and other OBIM systems about Machado and Muñoz.  See Undisputed Fact No. 1(a) & (b), *supra*.  According to the Holzer Declaration:

In response to Plaintiffs' requests, OBIM conducted a search of IDENT.  OBIM
notified the Plaintiffs that ADIS was not an OBIM system and that any requests for
ADIS records needed to be sent to CBP.

<u>See</u> Holzer Declaration [D.E. 29-1 ¶ 10].

Plaintiffs argue that, rather than telling them to send their requests for information in the

ADIS system to CBP, OBIM should have <u>referred</u> that portion of their requests to CPB who, in

turn, would have had to search its ADIS records.  <u>See</u> Plaintiffs' Reply [D.E. 75 at 5-6].  Plaintiffs

rely for this proposition on 6 C.F.R. § 5.4(c), a DHS regulation which provides:

> ***Re-routing of misdirected requests.*** Where a component's FOIA office determines
> that a request was misdirected within DHS, the receiving component's FOIA office
> shall route the request to the FOIA office of the proper component(s).

<u>See</u> 6 C.F.R. § 5.4(c).

According to Plaintiffs, FOIA Requests 2019-OBFO-05965 and 2019-OBFO-05966 were

"partially misdirected" to OBIM, thereby triggering OBIM's purported duty to refer the ADIS

portion of the requests to CBP.  However, the text of the regulation does not encompass "partial

misdirection" or require "referral"; it addresses "misdirection" and requires "routing".  Because

there is no basis for imposing a referral duty on OBIM pursuant to 6 C.F.R. § 5.4(c), Plaintiffs'

argument that OBIM's search was inadequate with respect to Plaintiffs' First and Second Causes

of Action fails.

## <u>PROPRIETY OF THE CLAIMED EXEMPTIONS</u>

At the Hearing, Plaintiffs stated that, if the undersigned found against them on the threshold

issues of Requested Correspondence and presumption of good faith, which the undersigned has,

they would withdraw their objections to Defendants' invocation of Exemptions 6, 7(C) and 7(E).

Therefore, the undersigned need only address objections to Exemptions 3 and 5.  Moreover,

Plaintiffs have limited their objections to the following invocations:

- Exemption 3 - invoked by OBIM with respect to the First, Second and Third Causes of Action and by the State Department with respect to the Seventh and Tenth Causes of Action.

- Exemptions 3 and 5 - invoked by the State Department with respect to the Eighth and Ninth Causes of Action.

*1. Exemption 3*

As previously noted, this exemption covers "matters that are . . . specifically exempted from disclosure by statute . . . ."  See 5 U.S.C. § 552(b)(3).  The non-disclosure statute must "require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or must "establish[] particular criteria for withholding or refer[] to particular types of matters to be withheld."  Id.  The non-disclosure statute upon which Defendants rely is Section 222(f) of the Immigration and Nationality Act ("INA"), which is codified at 8 U.S.C. § 1202(f) and provides, in pertinent part:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States. . .

See 8 U.S.C. § 1202(f) (hereafter, "Section 1202(f)").  It is well established that Section 1202(f) qualifies as a non-disclosure statute for purposes of FOIA Exemption 3.  Medina-Hincapie v. Dep't of State, 700 F.2d 737, 740-43 (D.C. Cir. 1983).  Moreover, in Spadaro v. U.S. Customs & Border Protection, 978 F.3d 34, 46 (2d Cir. 2020), the Second Circuit held that Section 1202(f)'s non-disclosure directive encompasses visa revocation records, such as those sought by Plaintiffs in this case.  As noted by Defendants, Spadaro comports with the view of the majority of federal district courts that have addressed this issue.  See Defendants' Reply in Further Support of their Motion

and Response to Cross-Motion (hereafter, "Defendants' Reply") [D.E. 74 at 14] (citing Beltranena v. U.S. Dep't of State, 821 F. Supp. 2d 167, 178 (D.D.C. 2011); Soto v. U.S. Dep't of State, No. 14-604, 2016 WL 3390667, at *4 (D.D.C. June 17, 2016); and Vizcarra Calderon v. U.S. Dep't of Homeland Sec., Case No. 18-CV-764-CV, 2020 WL 805212 (D.D.C. Feb. 18, 2020)). Having reviewed these cases, the undersigned finds that the weight of authority is represented by the Spadaro holding. Therefore, the undersigned declines Plaintiffs' invitation to rely on a contrary unpublished opinion from this district, Mantilla v. U.S. Dep't of State, No. 12-21109, 2012 WL 4372239 (S.D. Fla. Sept. 24. 2012), which found that Section 1202(f) did not apply to visa revocation records. Accordingly, the undersigned concludes that Defendants properly relied on Exemption 3 to withhold visa revocation records with respect to Plaintiffs' First, Second, Third, Fourth, Seventh, Eighth, Ninth and Tenth Causes of Action.

   *2.  Exemption 5*

   This exemption protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" and limits application of the "deliberative process privilege" to records that were created less than 25 years before they are requested. See 5 U.S.C. § 552(b)(5). Exemption 5 encompasses documents protected by the attorney-client privilege and the work product privilege. Miccosukee Tribe, 516 F.3d at 1262. Exemption 5 also encompasses the deliberative process privilege, which "'protect[s] against premature disclosure of proposed policies before they have been finally formulated or adopted and protect[s] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.'" Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1277 (11th Cir. 2004) (citation omitted and alteration in

original).   "To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'"  Id. (citing Dep't of Interior v. Klamath Water Users, 532 U.S. 1, 8 (2001)).

The Stein Declaration relied on Exemption 5's protection of the attorney-client and work product privileges to withhold "information that reflects confidential communications and advice between [State] Department officials and [State] Department attorneys regarding visa applications."  See Stein Declaration [D.E. 29-3 ¶ 63].  However, Defendants subsequently submitted a Second Stein Declaration.  See Defendants' Reply [D.E. 74 at 16-17]; Second Stein Declaration [D.E. 74-1].  The Second Stein Declaration states:

> 16. The [State] Department withheld certain information under the attorney-client privilege.  As I previously stated, the information withheld reflects communications to [State] Department attorneys for the purpose of receiving legal advice or the product of attorneys providing legal advice to [State] Department officials for the purpose of Plaintiffs' visa adjudications.  Providing more detail would reveal legally privileged information about the nature of the legal advice sought and offered on specific visa adjudications.
>
> 17. The [State] Department inadvertently asserted the attorney work product doctrine instead of the deliberative process privilege.  The deliberative process privilege protects the confidentiality of candid views and advice of U.S. Government officials in their internal deliberations related to policy formulation and administrative direction.  Material withheld here pursuant to the deliberative process privilege reflects internal [State] Department communications that are pre-decisional (they pre-date a final determination on Plaintiffs' visa adjudications) and deliberative (they evaluate how to approach the adjudications and handle communications regarding the same, including certain legal deliberations).  Disclosure of this information would impede the ability of responsible Executive Branch officials to formulate recommendations regarding, and effectively execute, visa adjudications by inhibiting candid discussion and the expression of viewpoints and judgments regarding said adjudications.

See Second Stein Declaration [D.E. 74-1 ¶¶ 16-17].

Plaintiffs contend that the Second Stein Declaration does not support application of the deliberative process privilege.  See Plaintiffs' Reply [D.E. 75 at 10] (citing Mead Data Cent., Inc.

v. U.S. Dep't of the Air Force, 566 F.2d 242, 258 (D.E. Cir. 1977) ("An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm.  It must show by specific and detailed proof that disclosure would defeat, rather than further, the purposes of the FOIA.")).  However, other than implying that the Second Stein Declaration is conclusory with respect to the deliberative process privilege by their citation to Mead Data, Plaintiffs do not point to any specific defects in that submission.  Indeed, rather than being impermissibly conclusory, the Second Stein Declaration "provide[s] specific information sufficient" to support the invocation of Exemption 5's protection over both the attorney-client and the deliberative process privileges.  Florida Immigrant Advocacy, 380 F. Supp. 2d at 1338.  Moreover, the "information is not contradicted in the record" and "there is no evidence in the record of agency bad faith."  Id.[4]  Accordingly, the undersigned concludes that Defendants properly relied on Exemption 5, as supported by the Second Stein Declaration, to withhold visa adjudication records with respect to Plaintiffs' Eighth and Ninth Causes of Action.

## **CONCLUSION**

Based on the foregoing considerations, the undersigned RESPECTFULLY RECOMMENDS that Defendants' Motion [D.E. 29] be GRANTED; Plaintiffs' Cross-Motion [D.E. 62] be DENIED; and Final Judgment be ENTERED in favor of Defendants.

The parties have **fourteen days** from the date of this Report and Recommendation to file written objections, if any, with the Honorable Darrin P. Gayles, United States District Judge.  Failure to file timely objections may bar the parties from attacking the factual findings contained herein on appeal.  See Resolution Tr. Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th

---

[4]  Although Plaintiffs challenged the good faith presumption as to the Holzer Declaration on behalf of OBIM and the Pineiro Declaration on behalf of ICE as a threshold issue, which challenge the undersigned rejected, Plaintiffs did not present a similar challenge to the Second Stein Declaration.

17

Cir. 1993).  Further, "failure to object in accordance with the provisions of [28 U.S.C.] § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  <u>See</u> 11th Cir. R. 3-1 (I.O.P. - 3).

      RESPECTFULLY SUBMITTED in Chambers at Miami, Florida, this <u>24th</u> day of February, 2022.

                  _____
                  ALICIA M. OTAZO-REYES
                  UNITED STATES MAGISTRATE JUDGE

cc:    United States District Judge Darrin P. Gayles
       Counsel of Record

18